**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

**STEPHEN T. HINES**,

          Plaintiff,

          v.

**BOROUGH OF BELMAR**, *et al.*,

          Defendants.

Civil Action No. 22-7335 (ZNQ) (JBD)

**OPINION**

---

**QURAISHI, District Judge**

    **THIS MATTER** comes before the Court upon a Motion for Summary Judgment filed by Defendants the Borough of Belmar, Michael Campbell, Philip Bohrman, Edward Kirschenbaum, and Mark Walsifer (collectively, "Defendants"). ("Motion", ECF No. 48.)  Defendants submitted a brief in support of the Motion ("Moving Br.", ECF No. 48-2), a Statement of Facts ("DSOF", ECF No. 48-3), and various exhibits (ECF Nos. 48-5 to 48-22).  Plaintiff Stephen T. Hines ("Plaintiff") filed a brief in opposition to the Motion ("Opp'n Br.", ECF No. 54), a response to Defendants' Statement of Facts ("PRSOF", ECF No. 54-1), and a Supplemental Statement of Facts ("PSOF", ECF No. 54-1).  Defendants filed a reply brief.  ("Reply Br.", ECF No. 55.)

    The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.[1]

---

[1] Hereinafter, all references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure unless otherwise noted.

For the reasons set forth below, the Court will **GRANT-IN-PART** and **DENY-IN-PART** Defendants' Motion.

## I.    BACKGROUND AND PROCEDURAL HISTORY

This is a false arrest and malicious prosecution case. Plaintiff is a former member of the Belmar First Aid Squad ("BFAS"), a 501(c)(3) non-profit organization,[2] and a former Captain of the Borough of Belmar Fire Department. (DSOF, ¶4; PSOF ¶2.) Defendants are the Borough of Belmar ("Belmar"); the Mayor of Belmar, Mark Walsifer ("Mayor Walsifer"); the Business Administrator of Belmar, Edward Kirschenbaum ("Administrator Kirschenbaum"); Belmar Police Department Detective, Philip Bohrman ("Detective Bohrman"); and Belmar Police Department Captain, Michael Campbell ("Captain Campbell"). ("Am. Compl.," ECF No. 38 ¶¶1–9.)

On November 25, 2020, Belmar required BFAS to submit to a financial audit before Belmar would disperse to BFAS its annual stipend. (DSOF ¶7.) BFAS did not comply with the request, and in early January 2021, BFAS announced via letter that, after 97 years, it would cease providing emergency medical operations and other services by March 31, 2021, and begin to prepare a dissolution plan. (*Id.* ¶9; ECF No. 48-7. Ex. C, "Notice of Cessation".) BFAS requested, however, that Belmar "continue to provide [its] stipend on a pro-rata basis" until March 31, 2021, to cover operation costs for the first quarter of 2021. (*Id.* ¶¶11–12.)

In furtherance of dissolution, BFAS arranged for the sale of its vehicles, equipment, and real property. BFAS first arranged to donate its rescue truck to a fire company in New York for $1. (PSOF ¶5.) Critically, on April 3, 2021, the day the truck was to be turned over, Plaintiff went to the Belmar Marina gas pump, used a town-issued key fob to enter the premises, entered a personal access code, and filled the rescue truck's gas tank. (DSOF ¶14.) Plaintiff was under the

---

[2] BFAS received an annual stipend from the Borough of Belmar but primarily sustained its operations through donations and self-generated funds. (DOSF ¶6.)

impression that Belmar would either deduct the cost of the gas ($56.64) from the pro-rated stipend BFAS requested, or bill BFAS directly.  (PSOF ¶¶7–8.)

BFAS additionally attempted to sell its real property, which was valued at $1,500,000.  (*Id.* ¶16.)  Plaintiff alleges that Belmar had hoped BFAS would simply turn over the property to Belmar, but BFAS decided to move forward with a sale and entertain bids.  (*Id.*)  On May 14, 2021, Administrator Kirschenbaum placed a bid on behalf of Belmar to purchase the BFAS property.  (DSOF ¶25; Notice of Cessation at 3.)  Belmar was the second highest bidder behind a developer.  (PSOF ¶16.)  As a result, Belmar adopted an ordinance authorizing the use of eminent domain to acquire the property which caused the developer to withdraw its bid.  (DSOF ¶27.)  Nevertheless, BFAS still refused to sell its property to Belmar without certain deed restrictions.

On July 6, 2021, Plaintiff and other BFAS members protested the ordinance and circulated a petition which collected enough signatures for a "Referendum," which would have required either that the ordinance be withdrawn or placed on the local ballot in the next election.  (*Id.* ¶28.)  Belmar ultimately withdrew the ordinance, but a deal was never reached as to Belmar's purchase of the BFAS property.  (*Id.* ¶29.)

Seven months later, on November 30, 2021, Detective Bohrman arrested Plaintiff and charged him—with the approval of Captain Campbell—on a Complaint-Summons with theft, in violation of N.J. Stat. Ann. § 2C:20-3, a disorderly persons offense, and official misconduct, in violation of N.J. Stat. Ann. § 2C:30-2, a third-degree offense, arising out of allegations that Defendant stole $56.64 worth of gas from the Belmar municipal gas pump on April 3, 2021.  (*Id.* ¶¶119–120, 137; *see also* ECF No. 48-11, Ex. I, Arrest Report.)  As a result of the charges, Plaintiff was suspended from the Belmar Fire Department.  (*Id.* ¶138.)

On January 28, 2022, the Monmouth County Prosecutor's Office dismissed both charges against Plaintiff for lack of evidence. (*Id.* ¶140; Ex. 48-15.)

On December 16, 2022, Plaintiff filed a ten-count Complaint in this Court, alleging various violations of his constitutional rights pursuant to 42 U.S.C. § 1983 and under the New Jersey Civil Rights Act and New Jersey Constitution. (ECF No. 1.) Defendants filed an Answer, and the parties began fact discovery.

On August 5, 2024, Plaintiff filed an Amended Complaint, alleging that Defendants, acting under color of law, committed, in violation of the Federal Constitution: false arrest (Count One); malicious prosecution (Count Two); conspiracy to violate civil rights (Count Three); abuse of process (Count Four); First Amendment retaliation (Count Five); and unlawful policy (Count Six). (*See generally* Am. Compl.) Plaintiff additionally alleges various state law claims, including that Defendants violated the New Jersey Civil Rights Act (Count Seven), and committed false arrest (Count Eight), malicious prosecution (Count Nine), and abuse of process (Count Ten), in violation of the New Jersey Constitution. (*See id.*)

On August 8, 2024, Defendants filed an Answer and asserted a Counterclaim against Plaintiff for attorneys' fees under 42 U.S.C. § 1988. (ECF No. 41.) On December 13, 2024, Defendants filed the instant Motion for Summary Judgment. (ECF No. 48.)

## II.     <u>SUBJECT MATTER JURISDICTION</u>

The Court has subject matter jurisdiction as to Plaintiff's federal law claims under 28 U.S.C. § 1331 and supplemental jurisdiction over his state law claims under 28 U.S.C. § 1367.

## III.     <u>LEGAL STANDARD</u>

Rule 56 provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a); *see also Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). The moving party bears the burden of establishing that no genuine dispute of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the non-moving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Id*. at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine dispute as to a material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which the non-moving party must rely to support its assertion that genuine disputes of material fact exist).

In deciding a motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter but to determine whether there is a genuine dispute for trial. *Anderson*, 477 U.S. at 248–49. The summary judgment standard, however, does not operate in a vacuum. "[T]he judge must view the evidence presented through the prism of the substantive evidentiary burden," *id*. at 254, and construe all facts and inferences in the light most favorable to the non-moving party. *See Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998).

## IV.   <u>DISCUSSION</u>

### A.    SECTION 1983 CLAIMS

Section 1983 provides a "civil remedy for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" *Halsey v. Pfeiffer*, 750 F.3d 273, 290 (3d Cir.

2014) (quoting 42 U.S.C. § 1983).  To state a claim under Section 1983, a plaintiff must show that "some person has deprived him of a federal right . . . [and] that the person who has deprived him of that right acted under color of state or territorial law." *Id.* (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (alteration in original)).

Government actors, however, may assert the defense of qualified immunity, which certain Defendants invoke here.  Qualified immunity shields police officers from liability unless they violated clearly established rights.  To determine if an officer's conduct is entitled to qualified immunity, courts ask: first, "whether the defendant's conduct violated a statutory or constitutional right," and second, "whether the right at issue was clearly established when the conduct took place." *White v. City of Vineland*, 500 F. Supp. 3d 295, 304–05 (D.N.J. 2020) (citing *Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 716 (3d Cir. 2018)).  In assessing this defense in the context of summary judgment, "the court must not resolve[] genuine disputes of fact in favor of the moving party; instead, it must decide whether the facts taken in the light most favorable to the non-moving party take the case to a place where the law is not clearly established." *Id.* at 305 (citing *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014)).

As set forth above, Plaintiff alleges the following claims under Section 1983: (1) false arrest; (2) malicious prosecution; (3) conspiracy to violate civil rights; (4) abuse of process; (5) First Amendment retaliation; and (6) unlawful policy.  (*See generally* Am. Compl.)  The Court addresses each in turn.

### 1. <u>False Arrest (Count One)</u>

In Count One, Plaintiff alleges that Detective Bohrman and Captain Campbell of the Belmar Police Department did not have probable cause to arrest him for theft and official misconduct.  "An 'arrest without probable cause is a constitutional violation' and gives rise to a cause of action for false arrest under 42 U.S.C. § 1983." *Noble v. City of Camden*, 112 F. Supp.

3d 208, 230 (D.N.J. 2015) (quoting *Patzig v. O'Neil*, 577 F.2d 841, 848 (3d Cir. 1978)). "To bring a claim for false arrest, a plaintiff must establish '(1) that there was an arrest; and (2) that the arrest was made without probable cause.'" *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020) (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012)). "The proper inquiry in a [S]ection 1983 claim based on false arrest . . . is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Groman v. Township of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995) (quoting *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988)). Thus, summary judgment for false arrest "is proper only if no reasonable juror could find a lack of probable cause for any of the charged crimes." *Cesnalis*, 973 F.3d at 199.

An officer has probable cause when the facts and circumstances within the arresting officer's knowledge are enough in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested. *See Ciardiello v. Sexton*, 390 F. App'x 193, 199 (3rd Cir. 2010) (citing *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995)). Because the Court is "evaluating probable cause at the summary judgment stage, [it] must assess probable cause based upon the 'totality-of-the-circumstances' available to the arresting officer and view those circumstances in the light most favorable" to Plaintiff. *Cesnalis*, 973 F.3d at 200 (quoting *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 468 (3d Cir. 2016)).

Turning to the charged offenses, there are genuine issues of material fact in dispute as to whether Detective Bohrman and Captain Campbell possessed probable cause to arrest Plaintiff for either offense.

### a)    Probable Cause to Arrest Plaintiff for Theft

First, "a person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with purpose to deprive him thereof." N.J. Stat. Ann. § 2C:20-3. Defendants argue that Detective Bohrman possessed probable cause to arrest Plaintiff for theft. In support, Defendants assert that Detective Bohrman, "received a file prepared by [Administrator] Kirschenbaum which confirmed on the fuel logs that [Plaintiff] had used his personal code he ha[d] [as] a Captain of the [Belmar] Fire Department to activate the gas pump in conjunction with the rescue truck key fob to take $56.64 worth of gas to fuel the rescue truck" on April 3, 2021. (Moving Br. at 16.) Defendants also argue that BFAS had "closed its doors on March 31, 2021," three days before Plaintiff used the gas pump. (*Id.*)

Although Plaintiff testified during his deposition that he never received express permission to fill up the BFAS truck on April 3, 2021 (ECF No. 48-9, 45:9–17), Detective Bohrman's investigation revealed that Belmar did not request the return of the truck's fuel key as of April 3, 2021, and no notice was given to Plaintiff or any other BFAS member that permission to use the municipal pump had been terminated. (PSOF ¶100; ECF No. 48-16, 26:14–17.) Detective Bohrman further testified that he never inquired about the gas arrangement between BFAS and Belmar, in which Belmar would bill BFAS for gas taken. (PSOF ¶104.) Detective Bohrman also admitted in his deposition that Plaintiff "topped off th[e] tank . . . in broad daylight" and "didn't make any money on this exchange." (ECF No. 48-16, 27:12–18.) And although BFAS stopped providing emergency medical services by March 31, 2021, it is unclear whether BFAS was fully dissolved by that point or that it ceased to exist such that Belmar could not bill BFAS for gas taken after March 31, 2021. (*See* Notice of Cessation; ECF No. 48-16, 26:14–17.)

Based on the foregoing, there is a disputed issue of material fact as to Plaintiff's state of mind and whether he intended to use the municipal gas pump on April 3, 2021 with the purpose of depriving Belmar of its property, i.e., without ever paying Belmar $56.64 for the gas. Therefore, the Court finds that a reasonable juror could conclude that Plaintiff did not unlawfully take gas insofar as he did not act with the requisite intent to deprive Belmar of its property. A reasonable juror could further conclude that the officers thus lacked probable cause to arrest Plaintiff for theft. Accordingly, summary judgment for false arrest is improper.

**b)      Probable Cause to Arrest Plaintiff for Official Misconduct**

Second, a public servant is guilty of official misconduct when, "with purpose to obtain a benefit for himself or another or to injure or to deprive another of a benefit . . . he commits an act relating to his office but constituting an unauthorized exercise of his official functions, knowing that such act is unauthorized, or he is committing such act in an unauthorized manner." N.J. Stat. Ann. § 2C:30-2.

As a preliminary matter, Defendants do not address in their Motion whether Detective Bohrman and Captain Campbell had probable cause to arrest Plaintiff for official misconduct. Their arguments as to probable cause are limited to theft. Nonetheless, the Court finds that there is a dispute of fact as to whether Plaintiff acted with a purpose to obtain a benefit and to whether the purported misconduct related to his position as a member of BFAS or as a member of the Belmar Fire Department. (*See* ECF No. 48-16, 54:1 to 55:14.) Detective Bohrman testified that on April 3, 2021, Plaintiff was acting in his capacity as a Captain of the Fire Department because he used his fire department code to access the municipal gas pump. (ECF No. 48-16, 54:13–15.) Plaintiff testified, however, that he used the municipal gas pump on April 3, 2021, to fill-up the BFAS rescue truck in anticipation of the truck's new owner coming to pick it up and that he

previously used his personal municipal pump access code for "both the firehouse and the first aid squad." (ECF No. 48-9, 41:25 to 42:1–6.)

Therefore, the Court finds that there are facts in dispute as to which office the alleged misconduct pertained to, and whether Plaintiff had the requisite intent to commit the unlawful act, to benefit himself, or to deprive Belmar of a benefit. As such, the Court cannot find at this time that Detective Bohrman and Captain Campbell had probable cause to arrest Plaintiff for official misconduct. Such an issue should be left for a jury.

### c)      Qualified Immunity

With that said, Defendants are entitled to qualified immunity "if a reasonable officer could have believed that probable cause existed" to arrest Plaintiff "in light of clearly established law and the information the [arresting] officers possessed." *Noble*, 112 F. Supp. 3d at 230 (citations omitted). In addition to the preceding discussion regarding disputed issues of fact as to probable cause for Plaintiff's arrest, it is undisputed that neither Detective Bohrman nor Captain Campbell contacted the Monmouth County Prosecutor's Office prior to charging Plaintiff with official misconduct, which officers are required to do pursuant to the New Jersey Attorney General guidelines prior to signing a complaint for official misconduct. (DSOF ¶39.)

Given the foregoing, the Court finds that the factual issues described above bar the application of qualified immunity for false arrest.

Accordingly, the Court will deny the Motion as to Count One.

### 2.      Malicious Prosecution (Count Two)

In Count Two, Plaintiff asserts a malicious prosecution claim against Administrator Kirschenbaum, Mayor Walsifer, Detective Bohrman, and Captain Campbell. To state a claim for malicious prosecution under the Fourth Amendment, a plaintiff must show that "(1) the defendant

initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Roberts v. County of Essex*, 648 F. Supp. 3d 519, 535 (3d Cir. 2022) (citing *Zimmerman v. Corbett*, 873 F.3d 414, 418 (3d Cir. 2017)).

As to the first prong, "[i]n most cases, a prosecutor rather than a police officer initiates a criminal prosecution," so the prosecutor is the proper defendant. *Sanders v. Jersey City*, Civ. No. 18-1057, 2021 WL 1589464, at *19 (D.N.J. Apr. 3, 2021) (quoting *Fought v. City of Wilkes-Barre*, 466 F. Supp. 3d 477, 507 n.6 (M.D. Pa. 2020)). "Particularly as to minor offenses, however, charging complaints may be drafted by officers in this state." *Id.* And "[i]f the officers influenced or participated in the decision to institute criminal proceedings, they can be liable for malicious prosecution." *Halsey*, 750 F.3d at 297 (citing *Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010)).

Defendants argue that this claim fails as a matter of law because there was probable cause to charge Plaintiff with theft and official misconduct. (Moving Br. at 18.) Plaintiff argues that Detective Bohrman and Captain Campbell filed criminal charges against him without probable cause and acted with malice. (Opp'n Br. at 16.) The parties do not dispute that the charges were later dismissed.

Here, the Court finds that the undisputed record can support a malicious prosecution claim against Detective Bohrman and Captain Campbell. Detective Bohrman and Captain Campbell, as the reporting and approving officers, respectively, initiated criminal proceedings against Plaintiff through the issuance of a Complaint-Summons and the charges were later dismissed by the

Monmouth County Prosecutors Office, a favorable outcome for Plaintiff. As to probable cause, the Court finds, as it did in the false arrest context, that based on the record before the Court, viewed in the light most favorable to Plaintiff, a reasonable juror could conclude that Detective Bohrman and Captain Campbell lacked probable cause as to each offense charged.[3] Moreover, a reasonable jury could arguably find that there was an improper motive behind the charging decision.

Given that it is "inappropriate for a court to grant a defendant officer's motion for summary judgment in a malicious prosecution case if . . . 'reasonable minds could differ' on whether he had probable cause for the institution of the criminal proceedings based on the information available to him," the Court will deny Defendants' Motion on Count two as to Detective Bohrman and Captain Campbell. *Halsey*, 750 F.3d at 300. However, the Court will grant Defendants' Motion on Count Two as to Administrator Kirschenbaum and Mayor Walsifer, both of whom are neither prosecutors nor police officers and cannot, at least not on the record before this Court, be liable for malicious prosecution.

### 3. Conspiracy to Violate Rights (Count Three)

In Count Three, Plaintiff alleges that Administrator Kirschenbaum, Mayor Walsifer, Detective Bohrman, and Captain Campbell conspired to violate his constitutional rights. "The elements of a conspiracy are that two or more persons conspire to deprive a person of constitutional rights, one or more of the conspirators performs any overt act in furtherance of the conspiracy, and the overt act injures the plaintiff or deprives him of any rights or privileges of a citizen . . . ." *Lankford v. City of Clifton Police Dep't*, 546 F. Supp. 3d 296, 317 (D.N.J. 2021) (citing *Barnes*

---

[3] The moment of arrest and the issuance of the Complaint-Summons appears to have been simultaneous. That is, according to the Incident Report, Detective Bohrman "advised Plaintiff that he was being charged with official misconduct and theft. He was led to our booking room where he was processed and later released on Summons #1307-S-2021-000301." (ECF No. 48-11, Ex. I.)

*Foundation v. Twp. of Lower Merion*, 242 F.3d 151 (3d Cir. 2001)).  In other words, "[t]o prove such a claim, a plaintiff must show the existence of a conspiracy and a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy."  *Id.* (citing *Jackson-Gilmore v. Dixon*, Civ. No. 04-3759, 2005 WL 3110991, at *12 (E.D. Pa Nov. 17, 2005)).

Defendants argue that summary judgment should be granted because Plaintiff fails to establish an underlying civil rights violation.  (Moving Br. at 29.)  Plaintiff argues that Defendants conspired to violate his constitutional rights by subjecting him to a retaliatory arrest.  (Opp'n Br. at 26.)  Plaintiff argues that Defendants arrested him in retaliation for his role in shuttering BFAS, refusing to sell BFAS property to Defendants, defeating Defendants' attempt to acquire the former BFAS headquarters through eminent domain, and due to Plaintiff's brother and nephew filing suit against Belmar and the Belmar Director or Public Works in an unrelated matter.  (Opp'n Br. at 26.)

Regarding the unrelated lawsuit, the record demonstrates that in September 2020, Plaintiff's brother informed the Monmouth County Prosecutor's Office that a handful of Belmar public officials, including Administrator Kirschenbaum and Captain Campbell's father (the Director of Belmar Public Works), were receiving discounted boat slips at Belmar Marina, using the Department of Public Works garage to store boats and personal vehicles, and filling up their personal vehicles at the municipal gas pump.  (PRSOF ¶2; PSOF ¶¶23, 25.)  The record also demonstrates that Plaintiff's nephew sued Captain Campbell's father for harassment following an alleged incident that occurred while the nephew worked at the Department of Public Works.  (PRSOF ¶2.)  Furthermore, and critically, Administrator Kirschenbaum initiated the investigation into Plaintiff by preparing a file consisting of documents related to Plaintiff's use of the municipal

13

pump, which was eventually given to Detective Bohrman, who would later charge Plaintiff with theft and official misconduct, with Captain Campbell's approval. (DSOF ¶¶122, 137.)

Therefore, based on the evidence in the record—including Plaintiff's involvement in defeating Belmar's purchase of the BFAS property, the appearance of impropriety due to Administrator Kirschenbaum's involvement in Plaintiff's investigation, and Captain Campbell's decision to sign off on the Complaint-Summons against Plaintiff while there was pending litigation between Plaintiff's family and Captain Campbell's father—the Court concludes that Administrator Kirschenbaum, Captain Campbell, and Detective Bohrman are not entitled to summary judgment on Plaintiff's conspiracy claim. Plaintiff has presented evidence that, if established at trial, arguably support the conclusion that Detective Bohrman, Captain Campbell, and Administrator Kirschenbaum acted together to arrest Plaintiff without probable cause for theft and official misconduct. *See Sebastian v. Vorhees Twp.*, Civ. No. 08-6097, 2011 WL 540301, at *6 (D.N.J. Feb. 8, 2011) (denying defendants summary judgment on a civil conspiracy claim where the plaintiff established that defendants conspired to falsely arrest him due to a lack of probable cause).

Accordingly, the Court will deny the Motion as to Count Three with respect to Administrator Kirschenbaum, Detective Bohrman, and Captain Campbell. The Court will grant the Motion with respect to Mayor Walsifer considering the lack of evidence in the record to support his involvement in the conspiracy.

### 4.    Abuse of Process (Count Four)

In Count Four, Plaintiff alleges an abuse of process claim against Administrator Kirschenbaum, Mayor Walsifer, Detective Bohrman, and Captain Campbell. "A successful claim of malicious abuse of process . . . requires a defendant's improper, unwarranted and perverted use of process after it has been issued." *Stolinski v. Pennypacker*, 772 F. Supp. 2d 626, 644–45 (D.N.J. 2011) (quoting *Wozniak v. Pennella*, 862 A.2d 539, 549 (N.J. Super. Ct. App. Div. 2004) (internal

quotation marks omitted)).  "The 'process' that must have been abused 'includes the summons, mandate, or writ used by a court to compel the appearance of the defendant in a legal action or compliance with its order.'"  *Id.* (quoting *Wozniak*, 862 A.2d at 549).  For an abuse of process claim, "process" is a narrow term that "refers to the abuse of procedural methods used by a court to 'acquire or exercise its jurisdiction over a person or over specific property.'"  *Ruberton v. Gabage*, 654 A.2d 1002, 1005 (N.J. Super. Ct. App. Div. 1995).  "Process is not abused unless after its issuance the defendant reveals an ulterior purpose he had in securing it by committing 'further acts' whereby he demonstrably uses the process as a means to coerce or oppress the plaintiff."  *Hoffman v. Asseenontv.com, Inc.*, 962 A.2d 532, 541 (N.J. Super. Ct. App. Div. 2009) (citing *Ruberton*, 654 A.2d at 1005) (citations omitted).

Here, Defendants argue that there is no evidence of an ulterior motive for either arresting Plaintiff or for their decision to charge Plaintiff with theft and official misconduct.  (Moving Br. at 23.)  Plaintiff argues that Detective Bohrman, Captain Campbell, Mayor Walsifer, and Administrator Kirschenbaum attempted to use the criminal charges levied against Plaintiff "as leverage in their bid to purchase BFAS property."  (Opp'n Br. at 21.)  In support of this claim, Plaintiff points to the testimony of Sean Pringle, a former Belmar police officer, who testified that Mayor Walsifer told him that if Plaintiff came to see him, he could "take care of this" and "make everything go away."  (Opp'n Br. at 22.)

Aside from Plaintiff's assertions that the criminal charges were brought against him as leverage in a bid for property, there is little evidence to support that Detective Bohrman, Captain Campbell, Mayor Walsifer, or Administrator Kirschenbaum attempted to or did in fact leverage the charges so that they may acquire the former BFAS headquarters.  However, there is deposition testimony from Ken Pringle, former counsel to BFAS, who testified that there is "longstanding

animosity between Administrator Kirschenbaum and the Hines" and that Plaintiff's arrest was in retaliation "against the Hines family over [their] refusal to sell the first aid building to them." (PSOF ¶43.)    Moreover, there is additional deposition testimony from Administrator Kirschenbaum himself, stating that he made the decision to delay filing charges against Plaintiff to "make sure we kept open lines of communication to achieve a goal of providing a new first aid squad for the borough residents after March 31, 2021, when the first aid squad ceased to exist." (*Id.* ¶69.)

Rather than show that Defendants used the charges as leverage in the process, the above testimony instead raises the prospect that Defendants ultimately arrested and charged Plaintiff when negotiations over the BFAS property took an unfavorable turn.    Therefore, when viewing the evidence in the light most favorable to Plaintiff, the Court finds that there is a genuine dispute of material fact as to the purpose of the charges brought against Plaintiff and whether the decision to investigate Plaintiff, initiated by Administrator Kirschenbaum, and the decision to arrest him, made by Detective Bohrman and Captain Campbell, were ultimately done to harass or oppress Plaintiff.  *See Beam v. Twp. Of Pemberton*, Civ. No. 19-20380, 2023 WL 2496460, at *34 (D.N.J. March 14, 2023) (citing *Ruberton*, 654 A.2d at 1005).  The Court therefore finds that a reasonable jury could determine that Administrator Kirschenbaum, Detective Bohrman, and Captain Campbell abused the process of an arrest.  Once again though, the evidence is lacking to support any involvement by Mayor Walsifer.  Accordingly, summary judgment will be denied as to those Defendants and granted as to Mayor Walsifer.

### 5.    First Amendment Retaliation (Count Five)

In Count Five, Plaintiff alleges a First Amendment retaliation claim against Administrator Kirschenbaum, Mayor Walsifer, Detective Bohrman, and Captain Campbell.  "[R]etaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the

Constitution actionable under § 1983." *Morales v. Maxwell*, 600 F. Supp. 3d 497, 518 (D.N.J. 2022) (quoting *White v. Napoleon*, 897 F.2d 103, 111–12 (3d Cir. 1990)).  To state a First Amendment retaliation claim, a plaintiff must plausibly allege "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Id.* (quoting *Zimmerlink v. Zapotsky*, 539 F. App'x 45, 48 (3d Cir. 2013)).  The existence of probable cause, however, defeats a First Amendment retaliation claim.  *Nieves v. Bartlett*, 587 U.S. 391, 397–98 (2019); *Fehl v. Borough of Wallington*, Civ. No. 17-11462, 2021 WL 4473157, at \*17 (D.N.J. Sept. 30, 2021), *aff'd*, Civ. No. 21-3019, 2023 WL 385168 (3d Cir. Jan. 25, 2023) (free speech retaliation claims failed where underlying arrest was supported by probable cause).

Defendants argue that Plaintiff's First Amendment retaliation claim requires Plaintiff to prove the absence of probable cause for the underlying criminal charges and this claim must therefore fail.  (Moving Br. at 25-26.)  Plaintiff argues that he was retaliated against for his opposition to Belmar's purchase of the BFAS property and specifically his involvement in getting the requisite number of signatures to trigger a referendum on Belmar's eminent domain ordinance. (Opp'n Br. at 23.)  Given that the Court already determined that there are material issues of fact in dispute concerning whether there was probable cause to arrest Plaintiff, the Court turns to whether there was a causal link between Plaintiff's canvassing efforts and his arrest.  The parties do not dispute that Plaintiff's participation in the canvassing effort is constitutionally protected under the First Amendment.

To establish the requisite causal connection for a retaliation claim predicated on the First Amendment, "the plaintiff usually must prove one of two things: (1) an unusually suggestive time

proximity between the protected activity and the allegedly retaliatory action; or (2) a pattern of antagonism coupled with timing to establish a causal link." *DeFranco v. Wolfe*, 387 F. App'x 147, 154 (3d Cir. 2010) (citing *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).

Here, Plaintiff has put forth evidence consistent with both avenues for causation. It is undisputed that Belmar bid on the BFAS property on May 14, 2021, and adopted its ordinance seeking to seize the property through eminent domain on July 6, 2021. (DSOF ¶¶25, 27.) Shortly thereafter, Plaintiff and others circulated a petition in opposition to the ordinance and Belmar withdrew the ordinance on August 3, 2021. (*Id.* ¶29.) And Plaintiff was then arrested on November 30, 2021. The above series of events suggests some proximity between Plaintiff's conduct and arrest. Furthermore, there is a demonstrated pattern of antagonism between Plaintiff and various Defendants related to the BFAS property. For example, Mayor Walsifer testified that Belmar's attempted purchase of the property turned into "political football." (*Id.* ¶203.) Ken Pringle testified that there was long standing animosity between Administrator Kirschenbaum and Plaintiff and that, in his view, "Defendants waited until after the November election to arrest and charge Plaintiff to ensure that it would not negatively impact 'a really really tight [election] race that they couldn't afford to lose.'" (PSOF ¶46.) And lastly, former Belmar Detective Sean Pringle also testified that the animosity between Plaintiff and his family and Administrator Kirschenbaum was well known among other public employees. (*Id.* ¶49.)

The Court therefore finds that a reasonable jury could infer causation and a causal link between the circulation of the petition and Plaintiff's arrest. Notwithstanding Mayor Walsifer's testimony, there is little other evidence for a reasonable jury to find him liable on a First Amendment retaliation claim. Accordingly, the Court will deny the Motion as to Count Five with

respect to Administrator Kirschenbaum, Captain Campbell, and Detective Bohrman, and will grant the Motion as to Mayor Walsifer.

### 6.    Official Policy (Count Six)

In Count Six, Plaintiff alleges a municipal liability claim against Administrator Kirschenbaum, Mayor Walsifer, and Belmar.  To find municipality liable under § 1983, a plaintiff must prove the existence of a policy or custom that resulted in a constitutional violation.  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694-95 (1978).  Liability "must be founded upon evidence that the government unit itself supported a violation of constitutional rights." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990).  A plaintiff can show the existence of a policy when a decisionmaker with final authority "issues an official proclamation, policy, or edict." *Id.* (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)).

Importantly, municipal liability under § 1983 requires an underlying constitutional violation.  *See Monell*, 436 U.S. at 690–91.  Indeed, without a "violation in the first place, there can be no derivative municipal claim." *See Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 245 n.15 (3d Cir. 2013); *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (noting that if a municipal employee "inflicted no constitutional injury . . . it is inconceivable that [the municipality] could be liable").

Defendants argue that Plaintiff has not demonstrated that Belmar had an official policy, custom or practice that permitted officers to violate a citizen's constitutional rights within the borough. (Moving Br. at 32–34.)  Plaintiff argues that Belmar, Administrator Kirschenbaum, and Mayor Walsifer enacted an unconstitutional policy to seize control of BFAS by withholding necessary funding, passing an eminent domain ordinance to seize BFAS property, and harassing and retaliating against individuals, including Plaintiff, who opposed these actions. (Opp'n Br. at 29.)

First, contrary to Defendants' position, the Court finds that Belmar "issued an official proclamation, policy, or edict" when it passed the eminent domain ordinance which would have allowed it to acquire the BFAS property. *See Monell*, 436 U.S. at 690 ("Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.").

However, to succeed on a *Monell* claim, a plaintiff must also demonstrate that the policy "inflicted the injury in question." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019). Notably, Defendants fail to argue that the policy did not result in a constitutional violation, in part because they argue there is no policy. Plaintiff argues that Defendants violated his First Amendment rights by retaliating against him "for obtaining sufficient referendum petition signatures to defeat Defendants' attempt to obtain BFAS property by enacting an eminent domain ordinance." (Opp'n Br. at 29.) Here, for the reasons stated in the previous section, the Court finds that there is sufficient evidence for a jury to find that certain Defendants committed First Amendment retaliation. (*See* DSOF ¶¶25, 27, 29, 203; PSOF ¶¶46, 49.) Therefore, at least one constitutional violation exists to provide a basis to hold Defendants liable under § 1983. *See, e.g.*, *Hohsfield v. Staffieri*, Civ. No. 21-19295, 2021 WL 5086367, at *4 (D.N.J. Nov. 1, 2021) (finding that the plaintiff's claims against the township failed because the court dismissed underlying civil rights claims).

At this stage, though, there is a dispute of fact as to whether the existence of the policy caused Plaintiff's purported constitutional violation. Summary judgment is therefore improper on this claim as to Administrator Kirschenbaum and Belmar but will be granted as Mayor Walsifer due to the complete lack of evidence to support his involvement in the policy's enactment.

### B.    STATE LAW CLAIMS

Plaintiff also brings state law claims under the New Jersey Civil Rights Act (Count Seven) and under the New Jersey Constitution for false arrest (Count Eight), malicious prosecution (Count Nine), and abuse of process (Count Ten).  The Court addresses each claim in turn.

### 1.    New Jersey Civil Rights Act (Count Seven)

Plaintiff asserts a violation of the New Jersey Civil Rights Act ("NJCRA") against Detective Bohrman, Captain Campbell, Administrator Kirschenbaum, and Mayor Walsifer.  The NJCRA was modeled after 42 U.S.C. § 1983 and creates a private cause of action for violations of civil rights secured under either the United States or New Jersey Constitutions.  *Slinger v. New Jersey*, Civ. No. 07–5561, 2008 WL 4126181, *5–6 (D.N.J. Sept. 4, 2008), *rev'd on other grounds*, 366 F. App'x 357 (3d Cir. 2010); *Armstrong v. Sherman*, Civ. No. 09–716, 2010 WL 2483911, *5 (D.N.J. June 4, 2010).  "The NJCRA is co-extensive with Section 1983." *White*, 500 F. Supp. 3d at 308; *see also Hottenstein v. City of Sea Isle City*, 977 F. Supp. 2d 353, 365 (D.N.J. 2013) ("This district has repeatedly interpreted [the] NJCRA analogously to § 1983." (quoting *Pettit v. New Jersey*, 2011 WL 1325614, at *3 (D.N.J. Mar. 30, 2011))).  Because the "allegations under the separate constitutions are virtually identical, and federal and New Jersey law governing these violations are substantially similar," *Middleton v. City of Ocean City*, Civ. No. 2014 WL 2931046, at *5 (D.N.J. June 30, 2014), the Motion will be denied as to Detective Bohrman and Captain Campbell but, for the same reasons as stated above, will be granted as to Mayor Walsifer.

### 2.    False Arrest (Count Eight)

Plaintiff also brings a state law claim for false arrest against Belmar, Administrator Kirschenbaum, Detective Bohrman, Captain Campbell, and Mayor Walsifer under the New Jersey Constitution.  Under New Jersey law, "[a] basis for a suit for false arrest arises where the aggrieved party is arrested without legal authority, as where he is arrested pursuant to process that is void.

False arrest, or false imprisonment, is the constraint of the person without legal justification." *Mesgleski v. Oraboni*, 748 A.2d 1130, 1138 (N.J. Super. Ct. App. Div. 2000). Because the Court has already determined that there are material facts in dispute that must go to a jury to determine if Plaintiff's arrest lacked probable cause, the Court will similarly deny summary judgment on this Count as to Administrator Kirschenbaum, Detective Bohrman, and Captain Campbell, but will again grant summary judgment as to Mayor Walsifer.

### 3.   Malicious Prosecution (Count Nine)

Plaintiff also brings a claim for malicious prosecution against the individual Defendants. Unlike a Section 1983 claim for malicious prosecution, New Jersey law does not contain the "requirement that the plaintiff [be] deprived of his or her liberty."[4] *Roberts*, 648 F. Supp. 3d at 535. A plaintiff can allege emotional distress, loss of employment, and the like, which would be recoverable on a claim for malicious prosecution under state law. *See, e.g.*, *Rumbauskas v. Cantor*, 649 A.2d 853, 856 (N.J. 1994) (noting that in malicious prosecution cases "some of the major elements of damages are humiliation, embarrassment, mental suffering, and wounded sensibilities"); *Epperson v. Wal-Mart Stores, Inc.*, 862 A.2d 1156, 1163 (N.J. Super. Ct. App. Div. 2004) (noting that damages related to loss of present or prospective employment which can be proved with reasonable certainty to have been caused by the prosecution are recoverable).

Defendants rely here on the same arguments made in support of summary judgment for Plaintiff's federal malicious prosecution claim under the United States Constitution. That is, Defendants insist that there was probable cause to arrest Plaintiff for theft and official misconduct.

---

[4] The elements of a malicious prosecution claim are: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *Zimmerman v. Corbett*, 873 F.3d 414, 418 (3d Cir. 2017). "Under New Jersey law, a malicious prosecution claim consists of the first four of these elements, without the requirement that the plaintiff was deprived of his or her liberty." *Roberts*, 648 F. Supp. 3d at 535 (citing *Trabal v. Wells Fargo Armored Serv. Corp.*, 269 F.3d 243, 248 (3d Cir. 2001)).

Defendants raise no other argument in favor of summary judgment on this claim. Therefore, the Court finds, as it did with the federal malicious prosecution claim brought under the United States Constitution, that based on the record before the Court, viewed in the light most favorable to Plaintiff, a reasonable juror could conclude that Detective Bohrman and Captain Campbell lacked probable cause as to each offense charged. Accordingly, summary judgment will be denied as to Administrator Kirschenbaum, Detective Bohrman, and Captain Campbell and granted as to Mayor Walsifer.

>               4.      Abuse of Process (Count Ten)

Lastly, Plaintiff brings an abuse of process claim under state law against the individual Defendants. To establish a claim for abuse of process under New Jersey state law, a plaintiff must show: "1) an ulterior motive and 2) some further act after an issuance of process representing the perversion of the legitimate use of process." *See Mosley v. Delaware River Port Authority, J.P.*, Civ. No. 99-4147, 2000 WL 1534743, at *9 (D.N.J. Aug. 7, 2000) (applying New Jersey law); *Stolinski v. Pennypacker*, 772 F. Supp. 2d 626, 644 (D.N.J. 2011). Here, for the same reasons as discussed above pertaining to Count Four, summary judgment will be denied as to Administrator Kirschenbaum, Detective Bohrman, and Captain Campbell and granted as to Mayor Walsifer.

**V.    CONCLUSION**

For the reasons stated above, the Court will **GRANT-IN-PART** and **DENY-IN-PART** the Motion. An appropriate Order will follow.


Date: July 30, 2025

>                               s/ Zahid N. Quraishi
>                               **ZAHID N. QURAISHI**
>                               **UNITED STATES DISTRICT JUDGE**